NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Order Filed on July 24, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In re:<br><br>M DESIGN VILLAGE, LLC,<br><br>      Debtor. | Case No. 24-21406 (MEH)<br><br>Chapter 11 |
| M DESIGN VILLAGE, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>VERSANT FUNDING LLC, UNITED STATES SMALL BUSINESS ADMINISTRATION, CLOUDFUND LLC, SAMSON MCA LLC, 7EVEN CAPITAL LLC, DUAL CAPITAL, LLC, MERK FUNDING, INC. and RBLX FUNDING, LLC,<br><br>      Defendants. | Adv. Pro. No. 24-01639 (MEH)<br><br>Hearing Date: April 3, 2025 |

**MEMORANDUM OPINION**

Before the Court is a motion (the "**Motion**") filed by Plaintiff-Debtor M Design Village, LLC (the "**Debtor**") to dismiss the Counterclaims filed against it by Defendants-Creditors Dual Capital, LLC ("**Dual**") and 7even Capital, LLC ("**7even**"). (*See* Debtor's Mot., Doc. No. 26). Dual and 7even filed a single joint opposition, (*see* Joint Opp'n Br., Doc. No. 29), to which the Debtor filed a reply. (*See* Debtor's Reply, Doc. No. 30). For the reasons discussed below, the Court **GRANTS** the Motion.

**DATED: July 24, 2025**

Honorable Mark E. Hall
United States Bankruptcy Judge

I.  BACKGROUND

The parties are familiar with the proceedings and underlying facts in this matter and therefore the Court recites only the procedural background and facts necessary to resolve the Motion. In doing so, the Court draws the facts from Dual's and 7even's Counterclaims and accepts them as true. *See e.g.*, *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011); *Dill v. Yellin*, 725 F. Supp. 3d 471, 480 (D.N.J. 2024). The Court also "may take judicial notice of the docket entries in [the underlying bankruptcy] case . . . to determine the timing and status of case events and other facts which are not reasonably in dispute." *In re Rothman*, No. 23-15073, 2024 WL 695753, at *9 n.9 (Bankr. D.N.J. Feb. 20, 2024) (quotation marks and citation omitted).

A.  Factual Background

On August 22, 2024, the Debtor entered into a Sale of Future Receipts Agreement with Dual (the "**Dual Agreement**") and a Sale of Future Receipts Agreement with 7even (the "**7even Agreement**") (together, the "**Agreements**"). (*See* Dual Countercl. ¶ 5, Doc. No. 23; 7even Countercl. ¶ 5, Doc. No. 24).

Under the Dual Agreement, the Debtor sold, assigned, and transferred to Dual $556,000 of Future Receipts, defined in the Dual Agreement as:

> all payments received by [Debtor], or its right to receive such payment in the ordinary course of [Debtor's] business, including, but not limited to (a) payments made by cash, check[,] Automated Clearing House ('ACH') aor [sic] other electronic transactions; (b) payments or rights to payments, made by credit card, debit card, bank card, charge card []; or (c) payments made by any other form.

(Dual Countercl. ¶¶ 5-6, Doc. No. 23).

2

Similarly, under the 7even Agreement, the Debtor sold, assigned, and transferred to 7even $555,999.84 of Future Receipts, defined in the 7even Agreement as: "all payments made by cash, check, Automated Clearing House ('ACH') or other electronic transfer, credit card, debit card, bank card, charge card . . . or other form of monetary payment in the ordinary course of Seller's business." (7even Countercl. ¶¶ 5-6, Doc. No. 24).

Both Agreements set forth a procedure for Dual and 7even to collect the Future Receipts sold to them by the Debtor. (Dual Countercl. ¶ 7, Doc. No. 23; 7even Countercl. ¶ 7, Doc. No. 24). First, each Agreement required the Debtor to designate a bank account into which all Future Receipts would be deposited. (Dual Countercl. ¶ 7, Doc. No. 23; 7even Countercl. ¶ 7, Doc. No. 24). Then, Dual and 7even were to debit a "Periodic Amount"—an amount calculated and defined in each Agreement—on a weekly basis. (Dual Countercl. ¶ 8, Doc. No. 23; 7even Countercl. ¶ 8, Doc. No. 24). Specifically, Dual was to debit $23,166.67 on a weekly basis, which was meant to equal 8% of the Debtor's collected Future Receipts, and 7even was to debit $23,166.66 on a weekly basis, which was meant to equal 4.59% of the Debtor's collected Future Receipts. (Dual Countercl. ¶ 8, Doc. No. 23; 7even Countercl. ¶ 8, Doc. No. 24).

Dual and 7even were to continue debiting the Future Receipts as described, so long as the Debtor was collecting Future Receipts, until Dual and 7even collected the full amount of Future Receipts purchased under their respective Agreements. (Dual Countercl. ¶ 9, Doc. No. 23; 7even Countercl. ¶ 9, Doc. No. 24). The Debtor going out of business or not collecting Future Receipts in a given week are not events of default under either Agreement. (Dual Countercl. ¶ 9, Doc. No. 23; 7even Countercl. ¶ 9, Doc. No. 24).

On November 18, 2024 (the "**Petition Date**"), nearly three months after entering into the Agreements with Dual and 7even, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (*See generally* Bankr. Case No. 24-21406-MEH).

As of the Petition Date, the Debtor was still remitting the Future Receipts it sold to Dual in accordance with the terms of the Dual Agreement and did not cease remitting the Future Receipts until after the Debtor filed its bankruptcy case. (Dual Countercl. ¶ 10, Doc. No. 23). As of the date Dual filed its Counterclaims on February 14, 2025, Dual had not collected a total of $331,500 of Future Receipts that it purchased from the Debtor. (*Id.* ¶ 11). With respect to 7even, as of the Petition Date 7even had not collected a total of $331,499.90 of Future Receipts that it purchased from the Debtor. (7even Countercl. ¶ 10, Doc. No. 24).

Dual and 7even assert that the following aspects of their respective Agreements demonstrate that the transactions were not loans, but rather "true sales" of the Debtor's accounts:

(a) The language in the Agreements consistently refer to the transactions as a purchase and sale;

(b) Dual and 7even have no recourse if the Debtor goes out of business or experiences a slowdown in business or a delay in collecting Future Receipts. Such circumstances are not events of default under the Agreements; and

(c) The Debtor has no right to repurchase the Future Receipts sold to Dual or 7even under their respective Agreements. (Dual Countercl. ¶ 16, Doc. No. 23; 7even Countercl. ¶ 14, Doc. No. 24).

Dual and 7even maintain that because the transactions were "true sales," the Debtor retained no legal or equitable interest in the sold accounts pursuant to Section 9-318(a) of the Uniform Commercial Code ("**UCC**") or Section 541 of the Bankruptcy Code, and thus, the Future Receipts

4

Dual and 7even purchased from the Debtor are not property of the Debtor's bankruptcy estate. (Dual Countercl. ¶¶ 14-15, 20, Doc. No. 23; 7even Countercl. ¶¶ 12-13, 15, Doc. No. 24).

Count I of Dual's and 7even's Counterclaims seeks a declaratory judgment determining that the Future Receipts purchased under their respective Agreements with the Debtor are not property of the bankruptcy estate. (*See* Dual Countercl. ¶¶ 13-20, Doc. No. 23; 7even Countercl. ¶¶ 11-15, Doc. No. 24). In Count II, Dual and 7even bring a tort claim for conversion, asserting that notwithstanding their ownership of the Future Receipts, the Debtor proceeded to the use the Future Receipts in connection with its cash collateral motion. (*See* Dual Countercl. ¶¶ 21-24, Doc. No. 23; 7even Countercl. ¶¶ 16-19, Doc. No. 24).

### B. Procedural History

#### 1. The Debtor Files Its Voluntary Petition for Chapter 11 Bankruptcy and the Court Hears First Day Matters

After the Debtor filed its voluntary petition for Chapter 11 bankruptcy on November 18, 2024, the Court held an expedited hearing on first day matters on November 22, 2024, which included a contested motion for interim and final orders authorizing, among other relief, the Debtor to use cash collateral pursuant to Sections 105, 363(c)(2)(B), 363(e), and 507(b) of the Bankruptcy Code, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, and Rule 4001-4 of the Local Bankruptcy Rules, as well as authorizing the Debtor to enter into a factoring arrangement with Versant Funding LLC ("**Versant**") to sell certain accounts receivables pursuant to Sections 363(b) and (f) of the Bankruptcy Code and to grant Versant security interests and claims pursuant to Sections 364(c) and (d) (the "**Cash Collateral Motion**").

Objecting to the Debtor's use of cash collateral and the proposed factoring arrangement were RBLX Funding, LLC ("**RBLX**") and Merk Funding, Inc. ("**Merk**"), both of whom entered into agreements with the Debtor similar to the Dual and 7even Agreements described above.

5

Counsel for RBLX and Merk also represent Dual and 7even. The issues raised in connection with the Cash Collateral Motion were highly contentious and involved the parties appearing at at least three separate hearings, submitting supplemental letter briefs, engaging in expedited discovery, and undertaking substantial good faith efforts to narrow and resolve the issues. The Debtor, RBLX, and Merk ultimately reached a global resolution and RBLX and Merk thereafter withdrew their objections to the Cash Collateral Motion with prejudice, in exchange for an allowed general unsecured claim in the total amount due as of the Petition Date. (*See* Stipulation and Consent Order, Doc. No. 79, Bankr. Case No. 24-21406-MEH). RBLX and Merk agreed to support their respective treatment as a general unsecured creditor so long as the Debtor proposed a distribution of ten percent (10%) to unsecured creditors under its proposed Plan. (*See id.*).

On December 12, 2024, the Court entered an Interim Order on the Cash Collateral Motion authorizing the Debtor to use cash collateral and enter into a factoring arrangement with Versant. (*See* Interim Order, Doc. No. 70, Bankr. Case No. 24-21406-MEH).

Following a final hearing on first day matters on January 13, 2025, the Court entered a Final Order on the Cash Collateral Motion on January 27, 2025 (the "**Final Order**"). (*See* Final Order, Doc. No. 88, Bankr. Case No. 24-21406-MEH). The Final Order, at Paragraph C and Section I, provides that Versant has a valid and subsisting first lien on all collateral and pre-petition collateral, and Section II provides the Debtor with authority to sell its post-petition accounts receivable to Versant, free and clear of all liens, claims, and encumbrances. (*See id.*). The Final Order further provides that all liens granted to Versant pursuant to the post-petition Factoring Arrangement "shall have super priority pursuant to Sections 364(c), 364(d)(1) and (2), and 510(a) of the Bankruptcy Code," and "shall prime and shall be senior in priority to all pre-petition liens and security interests whether valid, enforceable or otherwise[.]" (*See id.* at Section II, ¶ 2).

6

Additionally, the Final Order provides Versant with administrative expense rights that have priority over and that "shall at all times be senior to the rights of the Debtor and to the rights of any person claiming a lien or security interest in any assets of the Debtor." (*See id.* at Section II, ¶ 8). The Final Order also authorizes and directs Versant to collect outstanding accounts sold before the Petition Date, "which shall become the sole and exclusive property of Versant." (*See id.* at Section II, ¶ 10).

### 2. The Debtor Files This Adversary Proceeding and Motion to Dismiss the Counterclaims

On December 4, 2024, amid the Debtor's efforts to resolve RBLX's and Merk's objections to the Cash Collateral Motion, and presumably with the intent to streamline the issues and potentially avoid an evidentiary hearing in the main bankruptcy case, the Debtor filed this adversary proceeding, *M Design Village, LLC v. Versant Funding LLC, et al.*, Adv. Pro. No. 24-01639-MEH.

The Complaint includes fifteen (15) counts asserting various causes of action against defendants Versant, the United States Small Business Administration (the "**SBA**"), RBLX, Merk, Dual, 7even, Cloudfund LLC ("**Cloudfund**") and Samson MCA LLC ("**Samson**"). (*See generally* Compl., Doc. No. 1). On January 8, 2025, the Debtor voluntarily dismissed the Complaint as to RBLX and Merck pursuant to the global resolution reached in the main bankruptcy case on the Cash Collateral Motion. (*See* Notice, Doc. No. 8). On February 11, 2025, the Debtor voluntarily dismissed the Complaint as to Versant and the SBA. (*See* Notice, Doc. No. 22). The claims against Dual, 7even, Cloudfund, and Samson remain pending, and the Debtor is engaged in mediation with Cloudfund and Samson. (*See* Mediation Order, Doc. No. 34).

As against Dual and 7even, specifically, the Complaint sets forth the following causes of action: Count One – declaratory judgment for a determination of the nature, extent, validity, and

7

priority of securities interests; Count Two – declaratory judgment for a determination that the Dual Agreement and 7even Agreement are loan agreements; Count Three – declaratory judgment for a determination that Dual and 7even do not have a lien on the Debtor's collateral as of the petition date; Count Four – declaratory judgment for a determination that Dual and 7even do not have perfected liens; Count Five – equitable subordination pursuant to 11 U.S.C. § 510(c) as to any alleged claims of Dual or 7even; Count Six – declaratory judgment for a determination that the Dual Agreement and 7even Agreement are void and unenforceable; Counts Nine and Ten – avoidance of ninety-day preferential payments pursuant to 11 U.S.C. § 547(b); Count Thirteen – as to 7even, violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(4); Count Fourteen – disallowance of claims pursuant to 11 U.S.C. § 502; and Count Fifteen – as to 7even, false claims made pursuant to 18 U.S.C. § 152(4). (*See generally* Compl., Doc. No. 1).

Dual and 7even each filed an Answer along with identical Counterclaims against the Debtor. As described above, Count I of the Counterclaims seeks a declaratory judgment that Dual and 7even purchased certain of the Debtor's Future Receipts by way of a "true sale" under their respective Agreements with the Debtor, and thus these Future Receipts are not property of the bankruptcy estate. (*See* Dual Countercl. ¶¶ 13-20, Doc. No. 23; 7even Countercl. ¶¶ 11-15, Doc. No. 24). Count II of the Counterclaims asserts a tort claim for conversion based on Dual's and 7even's claim that the Debtor proceeded to use these Future Receipts in connection with its Cash Collateral motion. (*See* Dual Countercl. ¶¶ 21-24, Doc. No. 23; 7even Countercl. ¶¶ 16-19, Doc. No. 24).

The Debtor subsequently filed this Motion to dismiss Dual's and 7even's Counterclaims in their entirety, arguing, among other points, that the Final Order on the Cash Collateral Motion defeats Dual's and 7even's claims that they retained any rights in the Debtor's cash collateral or

8

"future receipts," as they are encompassed by Versant's valid senior lien and the post-petition Factoring Arrangement. (*See* Debtor's Moving Br. at 4, Doc. No. 26-1). The Final Order—the Debtor asserts—is law of the case.

In opposition, Dual and 7even argue that the law of the case doctrine is inapplicable when the issues raised in the Counterclaims were not previously presented to, litigated before, or decided by the Court. (*See* Joint Opp'n Br. at 8, Doc. No. 29). Dual and 7even maintain that the Debtor's arguments are premature and require the Court to make factual and legal determinations outside the scope of a motion to dismiss. (*See generally id.*).

The Court heard oral argument on the Motion on April 3, 2025, and thereafter took the matter under advisement for further consideration.

### 3. The Court Confirms the Debtor's Chapter 11 Plan

The Debtor filed its Chapter 11 Plan on April 16, 2025. (*See* First Modified Chapter 11 Plan, Doc. No. 121, Bankr. Case No. 24-21406-MEH). Dual and 7even filed objections to confirmation of the Plan that were largely premised on the same legal theories raised in their Counterclaims: that the Debtor seeks to use the Future Receipts that it sold to Dual and 7even pre-petition under the Agreements to fund the Plan; that the Debtor has likewise been improperly using the Future Receipts that it sold to Dual and 7even pre-petition; and that the Plan improperly treats Dual's and 7even's secured claims as unsecured claims. (*See* Dual Obj., Doc. No. 131 and 7even Obj., Doc. No. 132, Bankr. Case No. 24-21406-MEH).

On June 5, 2025, the Court confirmed the Plan over Dual and 7even's objections, finding that the Final Order on the Cash Collateral Motion is law of the case and thus already resolved and decided the issues Dual and 7even raised in objection to confirmation. The Court opined that:

9

> By its plain language . . . , the Final Order defeats any argument that Dual or 7even retained any rights in the Debtor's cash collateral or "future receipts," as they are encompassed by the valid senior lien of Versant (and the SBA), and the post-petition Factoring Arrangement with Versant. To the extent that Dual or 7even seek to challenge the Final Order's provisions or argue their interests somehow fall outside the scope of the Final Order, the time and place to have done so was at any point between the date when they were served with notice of the Cash Collateral Motion through the date of the Final Hearing on the Debtor's Cash Collateral Motion.
>
> . . .
>
> Dual and 7even had a right to raise their objections on these issues then, and further by filing their Proofs of Claim, Dual and 7even evidence that they knew how to assert their rights in this bankruptcy case, but elected not to pursue them when these issues were before the Court in relation to the Debtor's Cash Collateral Motion. Absent any kind of showing of extraordinary circumstances, which has not been presented by Dual or 7even, and in fact do not exist here, the law of the case doctrine does not countenance reconsideration or re-litigation of these issues now.

The Court concluded by finding that:

> the Debtor's proposed Plan satisfies the requirements of Section 1129 because it is based, in part, on the Court's earlier findings in the Final Order on the Cash Collateral Motion concerning the treatment of secured and unsecured creditors. Consistent with the provisions in the Final Cash Collateral Order, and from a practical perspective, it is irrelevant whether Dual's and 7even's claims are deemed secured because the Final Order grants Versant a valid and subsisting first lien on

10

all collateral and pre-petition collateral, and the Plan and Disclosure Statement demonstrate that Versant's liens alone far exceed the value of the Debtor's assets.

With this background and procedural history in mind, the Court turns to the issues raised by the Motion.

## II.   DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), allows a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint. *See, e.g.*, *Polysciences, Inc. v. Masrud*, No. 22-1767, 2023 WL 3377084, at *1-2 (3d Cir. May 11, 2023); *First Nat'l Prop. Mgmt., LLC v. Chapman*, No. 23-00603, 2024 WL 230115, at *2 (D.N.J. Jan. 22, 2024).

To survive a motion to dismiss, a counterclaim must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Polysciences*, 2023 WL 3377084, at *1 (applying the *Iqbal* standard to a counterclaim). "A claim has facial plausibility when the [counterclaim-plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). As the moving party, the counterclaim-defendant bears the burden of showing that the counterclaims fail to state a plausible claim for relief. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

When considering a motion to dismiss, the Court must "accept as true all factual allegations in the [counterclaims] and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)). "The primary question in deciding a motion to dismiss is not whether the [counterclaim-plaintiff] will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the [counterclaims]." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000)).

### B. Dual's and 7even's Counterclaims are Futile

In Count I of their Counterclaims, Dual and 7even ask this Court to determine that the Debtor retained no legal or equitable interest in the Future Receipts because the Debtor sold them to Dual and 7even via transactions that were "true sales," not loans. Dual and 7even argue that having acquired the Future Receipts pursuant to "true sales," such property is outside the Debtor's bankruptcy estate.

Under their respective Agreements, Dual advanced to the Debtor $556,000 and 7even advanced to the Debtor $555,999.84 in exchange for a percentage of the Debtor's future receivables. The Agreements then permitted Dual and 7even to debit those pre-determined amounts on a weekly basis from the Debtor's bank account holding the collected Future Receipts. Dual and 7even presumably received their portions of whatever pre-petition receivables the Debtor had prior to the Petition Date. Dual and 7even are essentially asking this Court to rule that the Debtor, prior to the Petition Date, had the ability to sell or transfer an interest in accounts receivable that may or may not come into existence until after the Petition Date. The Court finds this argument unconvincing.

First, as one court has explained, "a putative present sale of rights to payment that do not yet exist . . . is both a metaphysical and legal impossibility. . . . A transfer of future rights to payment—that is, rights that as yet do not exist—cannot occur unless and until the rights to payment arise." *In re Watchmen Sec. LLC*, No. 24-00087, 2024 WL 4903363, at *4 (Bankr. S.D. Ind. Nov. 20, 2024) (quoting John F. Hilson & Stephen L. Sepinuck, A "Sale" of Future Receivables: Disguising A Secured Loan as a Purchase of Hope, 9 Transactional Lawyer 14, 15 (2019)) (quotation marks omitted).

Second, this Court's prior determinations made in connection with the Final Order on Cash Collateral and, most recently, confirmation of the Debtor's Plan, are law of the case and render Dual's and 7even's Counterclaims futile. The law of the case doctrine provides "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 836 (3d Cir. 2022). The doctrine's purpose is "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit[,]" *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quotation marks and citation omitted), as well as "to promote the judicial system's interest in finality and in efficient administration." *Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) (quotation marks and citation omitted). Therefore, courts "apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir. 2020) (quotation marks and citation omitted). While "[a] court has the power to revisit prior decisions of its own[,] . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision

was clearly erroneous and would make a manifest injustice." *In re Pharmacy Benefit Managers*, 582 F.3d at 439 (quotation marks and citation omitted).

Here, the Court has already determined by way of the Final Order on Cash Collateral and, most recently, confirmation of the Debtor's Plan, that as of the Petition Date, there was no value in any of the Debtor's pre-petition assets to which Dual's and 7even's security interests, if any, could attach. Whatever interest (ownership or lien) Dual and 7even held in the Debtor's future receivables under their respective Agreements is encompassed by and inferior to the valid senior lien of Versant (and the SBA) and the post-petition Factoring Arrangement with Versant. This, combined with the fact that Versant's liens alone exceed the value of the Debtor's assets, means that practically, Dual and 7even can only be, at best, general unsecured creditors, and are, in fact, treated as such in the confirmed Plan. These determinations are law of the case, and the Court, having not been presented with any extraordinary circumstances, and seeing none, will not revisit its determinations within the context of Dual's and 7even's Counterclaims.

For these reasons, the Court finds that Dual's and 7even's Counterclaim I seeking a determination that the Debtor retained no legal or equitable interest in the Future Receipts is futile and will be dismissed with prejudice. Likewise, Dual's and 7even's Counterclaim II for conversion, which presupposes Dual's and 7even's ownership in the Future Receipts, will also be dismissed with prejudice.

### III. CONCLUSION

Accordingly, for the reasons discussed above, the Debtor's Motion to dismiss Dual's and 7even's Counterclaims is **GRANTED** and the Counterclaims are dismissed in their entirety with prejudice. The Court will enter an appropriate Order.